26 C.C.P.A. (Patents)

## In re FREEMAN.

## Patent Appeal No. 4176.

Court of Customs and Patent Appeals.

June 5, 1939.

Chas. E. Riordon and C. Russell Riordon, both of Washington, D. C., for appellant.

188

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office requiring division between four groups of claims in appellant's application for a patent for an alleged invention relating to ornamenting machines, for use in the manufacture of boots and shoes, which simultaneously perforate and mark shoe parts. The perforations form ornamental designs, which may simulate stitching, and the markings may be used as a guide for subsequent operations on the shoe parts. The markings are made with ink or its equivalent.

Group 1 includes claims 1 to 11, inclusive, and 37 to 42, inclusive. Group 2 includes claims 12 to 16, inclusive. Group 3 includes claims 17 to 24, inclusive, and 33 to 36, inclusive. Group 4 includes claims 25 to 32, inclusive.

Claims 1 and 40 are representative of group 1; claim 12, group 2; claim 17, group 3; claim 25, group 4. They read:

"1. In an ornamenting machine having a die, and a pressure member opposed to said die, the combination with means to hold and unwind a roll of backing material for the die, means to rewind said material into a roll, and means to move said holding means from its normal position of rest, to facilitate application of the roll of material thereto."

"40. In an ornamenting machine of the class described, a work support, an ornamenting die, a die carriage mounted for movement into and out of an aligned operating position, means to apply ink to said die during said movement; means to effect a relative movement between said die and said work support; means to hold and unwind a roll of backing material for the die, means to rewind said material into a roll, means to move said holding means and said rewinding means from normal positions of rest, to facilitate application and removal of the roll of backing material, means to synchronize movements of said unwinding and rewinding means with the relative movement between the die and work support and with move-

ments of the die carriage, means to detachably mount and lock the die on said carriage, and means cooperative with said mounting and locking means to restrain the means for effecting relative movement from operation, when the die is not locked to its carriage."

"12. An ornamenting machine of the class described comprising a work support, an ornamenting die effective to place a marking medium on a work piece on said support, means to apply the marking medium to said die, and means to control the degree of contact between said die and applying means whereby to ensure application of the proper amount of marking medium to said die."

"17. In an ornamenting machine of the class described, a pressure member, a die carriage mounted for movement into and out of an aligned operating position relative to said pressure member, means to actuate said carriage, and means to actuate said pressure member through an operating stroke, control means for initiating operation of the support actuating means, comprising a cam roll on said carriage and a cam shaft having a cam positioned in the path of movement of said roll, and connections from said cam shaft to said support actuating means operable by movement of said cam shaft."

"25. An ornamenting machine comprising a work support, a die holder and a die, means to detachably mount said die on said holder and lock the die in position, mechanism providing relative movement between said support and holder to effect an ornamenting operation, and means cooperative with said mounting and locking means to lock said mechanism when the die is unlocked, comprising a member slidable into the path of the die and a member actuatable by the die to control movement of said slidable member."

The claims on appeal are subcombination claims. Claims 37 to 42, inclusive, differ from the other appealed claims in that, as stated in the brief of counsel for appellant, they include "elements culled from" each of the groups of subcombination claims.

In his decision of August 15, 1936, the Primary Examiner stated that the following references were made of record: Evans et al., 1,499,608, July 1, 1924, 101–3; Freeman, 1,990,598, Feb. 12, 1935, 101–316; Freeman, 2,035,956, Mar. 31, 1936, 101–316;

Ford, 1,745,531, Feb. 4, 1930, 101–335; Glass, 1,808,812, June 9, 1931, 101–335; Gebhardt, 1,411,011, Mar. 28, 1922, 101–383; Bartel, 1,708,687, Apr. 9, 1929, 101–383.

In the examiner's statement to the Board of Appeals, October 1, 1937, those references were cited, and the reference patent to Freeman, No. 1,990,598, issued to appellant February 12, 1935, which relates to a combined perforating and marking die, was described and its operation explained. None of the appealed claims were finally rejected as unpatentable in view of the references. Accordingly, the references need not be discussed here.

In his decision, the Primary Examiner expressed the view that claims 37 to 42, inclusive, were for "unpatentable associations of several features," and, therefore, were placed in group 1 for convenience only. The examiner divided the claims into five groups, and required division between those groups of claims. He stated that the claims in group 1 relate to winding and rewinding mechanism, and that appellant's machine would operate with any winding or rewinding mechanism; that the claims in group 2 relate to features of the inking mechanism for marking, that the marking elements specified in that group of claims might be inked in any appropriate manner and by any suitable mechanism, and that the functioning of the machine was not affected by adjustment of the inking device; that the claims in group 3 are drawn to a die carriage operating and control mechanism, that the control means in those claims does not in any way affect the operation of the machine, and that if they were removed the machine would operate as was to be expected; that the claims in group 4 relate to interlocking safety features to prevent operation of the machine except when the die is securely in place, and that such interlocking feature has no other bearing on the operation of the machine; and that the claims in group 5 relate to locking means for securing the die to the carriage, and that such die securing means, except as it cooperates with the interlocking safety device of group 4, serves only as a fastening means and has no other function.

It may be said at this point that the Board of Appeals combined the claims in the Primary Examiner's groups 4 and 5, and held that division should not be required between those two groups of claims. To that extent only, the board reversed the decision of the examiner.

It appears from the examiner's letter of August 15, 1936, that the winding and rewinding mechanism defined in claims 1 to 11, inclusive, in group 1 is classified in the United States Patent Office in class 101, subclass 316; that the inking mechanism defined in the second group of claims, Nos. 12 to 16, inclusive, is classified in class 101, subclass 335; that the operating and control mechanism for the die carriage defined in the third group of claims, is classified in class 101, subclass 316; that the interlocking features, defined in claims 25 to 29, inclusive, in group 4, are classified in class 101, subclass 316; and that the locking means for securing the die to the carriage, defined in claims 30 to 32, inclusive, in group 4, are classified in class 101, subclass 383. It thus appears that the elements defined in claims 1 to 11, inclusive, in group 1, those defined in the claims in group 3, and those defined in claims 25 to 29, inclusive, in group 4 are classified in the same subclass of class 101.

In its original decision, dated April 8, 1938, the Board of Appeals stated, among other things, that—

"Broadly, the improvements relate to different subcombinations of a printing machine. As we understand, with the exception of groups 4 and 5, appellant does not contend that if all the subcombinations were applied to an existing machine any one would affect the operation of any other. We also do not understand that he contends that if he took out separate patents on the subcombinations, the patents would be invalid because each would not cover a complete invention.

"By way of illustration, we believe it is clear that the improvement in the inking mechanism covered by the claims of group 2 (classified by the examiner in class 101, subclass 335) would not in any way affect the means for securing the die to the carriage of group 5 (classified in subclass 383).

"We think it is also true that the presence or absence of the winding and rewinding mechanism covered by certain claims of group 1 would not affect the subcombinations of groups 2 and 5. We also consider that the use of the safety device of group 4 does not in any way affect the operation of the inking mechanism or the winding and rewinding mechanism.

It is true that the subjects matter of groups 1, 3 and 4 apparently are classifiable in the same subclass. That, however, does not indicate that these improvements are interdependent. Subclass 316 is in the nature of a miscellaneous subclass for certain types of printing machines and includes any subcombinations for machines of that type which do not fall within any of the subcombination subclasses. Presumably, as the art develops other subclasses may be formed, within which various other subcombinations will be classifiable.

"It has long been recognized that many of the subcombinations of printing machines have acquired a distinct status in the art and that separate patents should be taken out on these subcombinations. We can see no reason why the various subcombinations of appellant's disclosure should be examined and perhaps patented in the same case. To permit this to be done we are satisfied would be contrary to the long-established practice of this Office and of the Courts."

The board also stated in its decision that it considered the subject matter of claims 37 to 42, inclusive, as unpatentable, and as having been rejected as an unpatentable association of features by the Primary Examiner.

In a memorandum in support of a petition for rehearing and reconsideration of the board's original decision, counsel for appellant stated that appellant contended that "every subcombination affects the operation of the die, and hence it follows that if any one of these features were omitted, the effect of the other features on the die operation might conceivably be varied"; that appellant stated on the hearing on appeal before the Board of Appeals that separate patents for each group of subcombination claims would not be invalid on the ground of double patenting, but that he did not believe that each group of claims defined a separate and complete invention; that the elements defined in the several groups of claims, when combined, contributed to a unitary structure; and that the question of the patentability of claims 37 to 42, inclusive, included by the Primary Examiner in group 1, was not before the board for consideration.

In its second decision, dated April 23, 1938, the Board of Appeals stated that the subcombinations defined in each of the four groups of claims here on appeal have "acquired a distinct status in the art," and that it adhered to the views expressed in its original decision relative to the unpatentability of claims 37 to 42, inclusive, and to the requirement for division.

In a supplementary decision, dated April 27, 1938, the Board of Appeals stated:

"Since writing our reply of April 23, 1938, to appellant's petition for reconsideration, it has occurred to us that, in holding that the examiner intended to reject claims 37–42 inclusive on the ground that they do not define a patentable combination, we have taken the position that the examiner had made a piecemeal action on the merits of the claims. In view of this situation, we are now of the opinion that we should not have interpreted the examiner's remarks in this manner.

"We deem it necessary, however, to refer to at least one of the claims in the group under consideration. Claim 40 may be regarded as representative for this purpose. This claim includes the specific improvement in *the winding and unwinding means set forth in certain claims in group 1* and also the *specific safety means set forth in combined groups 4 and 5*. This claim, along with others, we believe to have been inserted into the case by applicant in an effort to show a patentable relationship between the specific matters of group 1 and combined groups 4 and 5. *It is true that claim 40 specifies in effect that the means for controlling the winding is synchronized with the movement of the die carriage; but in any printing machine the various parts must of course be synchronized with the other parts and we therefore can see no reason why this claim can be regarded as establishing a patentable cooperation between the winding and unwinding mechanism and the die support and safety means as claimed in different groups.* When an applicant files a case containing claims for various subcombinations, which are regarded by the examiner as for separate inventions, and he requires division before action on the merits, we do not believe that the introduction of a claim containing a plurality of these subcombinations can be relied upon as a matter of course for forcing an action on the merits.

"The petition is now granted to the extent that we withdraw our statement to the effect that the examiner intended to

reject claims 37–42 inclusive on the merits and we also withdraw any remarks indicating that we favor such a rejection. When these claims come before the examiner for action on the merits, he should consider them without prejudice, except as to any bearing which he may believe the final decision on the requirement for division may have upon them." (Italics ours.)

It is contended here by counsel for appellant that the winding and rewinding mechanism, defined in claims 1 to 11, inclusive, in group 1, is operated in synchronized relation to the movements of the die; that the inking mechanism, defined in the claims in group 2, operates in timed relation with respect to the movements of the die; that the claims in group 3 relate to the die carriage and to mechanism for moving the die carriage and its die into proper operating positions, and also include control mechanisms for synchronizing the movement of the die and die carriage with respect to other parts of the machine; that the claims in group 4 relate to the detachable mounting of the die, to means to lock the die in position, and to means for locking the machine to prevent its operation when the die is unlocked from the die carriage; that "all of the groups fall in the same main class"; that "most of the groups will be examinable in the same subclass"; that the same examiner will handle all of the claims; that the several groups of claims do not define distinct and independent inventions; and that, therefore, the tribunals of the Patent Office erred in requiring division.

In support of their contentions, counsel for appellant rely upon our decisions in the cases of In re Rupert E. Rundell, 19 C. C.P.A., Patents, 932, 55 F.2d 450; In re Wilfred J. Hawkins, 19 C.C.P.A., Patents, 1104, 57 F.2d 367; and In re Ferenci, 23 C.C.P.A., Patents, 1023, 83 F.2d 279.

In the case of In re Ferenci, supra, this court reviewed many authorities on the subject of division, including the decisions in the cases of In re Rupert E. Rundell and In re Wilfred J. Hawkins, supra, and said, inter alia, [ 23 C.C.P.A., Patents, 1023, 83 F.2d 283]:

"It will be noticed in the above quotation [from the decision of the Board of Appeals] that there are two main reasons which brought the board to the conclusion that the inventions were so unrelated as to prevent their being included in the same application: First, agreeable to the holding in Re Creveling [46 App.D.C. 536] (although not cited), it is pointed out that the wrapping material severing means and the bread slicing machine 'have each acquired a distinct status in the art'; second, it is intimated that the details of the subcombination claims 'are adapted for use generally in other structures or combinations and their functions are well understood.'

"While we approve of the application of these two considerations in determining when two or more inventions may be 'related' in respects heretofore referred to, we are not willing to say that the application of one or both of them may in every instance be determinative of the question. We think, however, that where a subcombination has acquired an independent status in the art, as is evidenced by patents being granted for the subject-matter of such subcombination, and a separate examining division in the Patent Office is set up for its consideration, and where the subject-matter of such combination is a matter of common understanding and is adapted for substantial, practical uses other than in, and independent of, the general combination, it ordinarily would not be regarded as being so related to the general combination as to entitle it to be claimed in the same application with the combination to which it belonged.

"Obvious difficulties in making application of the foregoing principles in every instance where the question might arise would suggest that they should not be regarded as inflexible and indispensable criteria. In some of the cases involving this question, there might be no factual basis for the application of all the above principles, and yet the subcombinations there involved might clearly be unrelated to the other claimed subject-matter.

"The views above expressed are, in part, very clearly and succinctly stated at page 465 of the Journal of the Patent Office Society, vol. 1, No. 9, in an article by C. H. Pierce, and we quote therefrom as follows:

" ' * * * it is believed to be the more modern doctrine and practice that where an element or subcombination which is claimed in the same case with a combination of which it forms a part, even if that combination be new, is clearly capable

of use apart from the combination and in other relations and not restricted in its design, operation and capabilities to use therewith, and if in addition there is a developed state of the art in relation to it, constituting a different field of activity and search, division may be required without awaiting determination of the novelty of the combination.' "

In the case of In re Ferenci, supra, the requirement for division was between combination claims and subcombination claims; whereas, in the instant case there are no combination claims, and the requirement for division is between four groups of subcombination claims.

It appears from the decision of the Board of Appeals that subclass 316 in which the subcombinations defined in claims 1 to 11, inclusive, in group 1, those defined in the claims in group 3, and those defined in claims 25 to 29, inclusive, in group 4 are classified in the United States Patent Office, is in "the nature of a miscellaneous subclass for certain types of printing machines and includes any subcombinations for machines of that type which do not fall within any of the subcombination subclasses," and that merely because certain of the involved subcombinations fall within that subclass "does not indicate" that they "are interdependent."

There is nothing of record to controvert that statement in the board's decision. Furthermore, it may be said that, although the fact that subcombination claims are classified in the same subclass is a factor to be considered, it is not determinative of the propriety of a requirement for division. In re Ferenci, supra.

It further appears from the decision of the Board of Appeals that the subcombinations defined in each of the four groups of claims here on appeal are capable of use otherwise than in the combination of which they were intended to be made a part, and that they have acquired an independent status in the art.

Those statements in the board's decision are not controverted by any evidence of record, and, therefore, must be accepted by us in a determination of the issues here involved.

In view of the related facts, it is evident, we think, that the subcombinations defined in the claims in each of the four groups here on appeal are not restricted either in design or operation to any particular machine; that they involve separate and independent inventive acts, and are not so related as to entitle them to be claimed in the same application. In re Ferenci, supra.

The decision of the Board of Appeals is affirmed.

Affirmed.