29 C.C.P.A. (Patents)

## In re LEWIS.

### Patent Appeal No. 4551.

Court of Customs and Patent Appeals.

June 15, 1942.

Dorsey, Cole & Garner, of Washington, D. C. (Vernon M. Dorsey, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 1, 2, 3, and 9 of appellant's application for a patent. Claim No. 7 was also before the Board of Appeals on appeal from the examiner, but the latter's decision as to that claim was reversed.

Before us appellant has moved to dismiss the appeal as to claim 9 and it will be so

ordered, leaving only claims 1, 2, and 3 for our consideration. These claims were rejected by the examiner upon the ground of aggregation. The board affirmed this ground of rejection and also held that the claims lacked invention over the cited prior art.

Claim 1 is illustrative of the subject matter claimed and reads as follows:

"1. The combination with a sheet forming system comprising a melting furnace, a shiftable sheet forming machine receiving glass therefrom, and a conveyor in line with the sheet forming machine and receiving the sheet therefrom, the conveyor having a removable section, of a movable forehearth adapted to be inserted in the line of fixed section conveyor in the rear of the sheet forming mechanism, and a movable furnace having a discharge spout adapted by its movement to be brought into line with the conveyor."

Appellant's application relates to apparatus for the manufacture of sheet glass. The examiner in his statement concisely described appellant's alleged invention as follows:

"The subject matter sought to be covered by the finally rejected and appealed claims is an apparatus for the manufacture of sheet glass. The applicant places in the conveyors from the forming machine of a continuous tank a movable section which may be replaced by a forehearth and the forming machine of a day tank and provides a movable day tank which may be shifted in position so that it is alternately in operative communication with a fuel feeding system and in a position where its discharge spout will feed the movable forehearth. The purpose is to provide an arrangement operative when it is desired to melt special glasses in quantities less than that justifying the use of the continuous tank and so the so-called day tank is used. * * *"

We will first consider the rejection of the claims upon the ground of aggregation. Appellant's application states:

"A standard practice for the manufacture of flat glass in large quantities involves the melting of the glass in a continuous tank and the fabrication at a forming pass of the molten glass delivered thereby into a continuous ribbon, a number of feet in width and of the desired thickness, and the delivery of the ribbon from the pass to a continuous lehr, the furnace, the forming pass and the lehr being in a straight line. The lehr is necessarily of great length to obtain the proper thermal cycle and is expensive and the tank that it may deliver the necessary amount of properly refined and melted glass is very large. It is often desired, however, to melt special glasses in quantities less than that justifying the use of the continuous tank, and for this purpose the so-called day tank is used. The handling of the sheets produced by the day tank, however, presents a problem in that they must be annealed, and if a continuous ribbon is to be fabricated such a procedure demands a lehr in alignment with the delivery from the forming pass.

"My invention has for its object to provide means whereby the lehr which normally receives the glass ribbon from a continuous tank may when desired receive the ribbon from a day tank in lieu of that from the continuous tank. This I accomplish by placing in the conveyors from the forming machine of the continuous tank a movable section which may be replaced by a forehearth and a forming machine of the day tank and by providing a movable day tank which may be shifted in position so that it is alternately in operative communication with a fuel feeding system and in a position where its discharge spout will feed the movable forehearth."

The sole question upon this branch of the case is whether supplying a continuous melting furnace and also a movable furnace, both of which are never used at the same time or in the same operation of the system, renders the claims aggregative.

The only object of the movable furnace and attendant apparatus is to permit the manufacture of small quantities of glass, which cannot be economically done when the continuous tank is employed.

While the question of what constitutes an aggregation in patent law has been a troublesome one and has been much discussed by the courts, we think the proposition is well settled that, to render claims for a combination patentable, all parts of the apparatus must function simultaneously or successively to produce a unitary result. Reckendorfer v. Faber, 92 U.S. 347, 23 L. Ed. 719; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196; Hailes v. Van Wormer, 20 Wall. 353, 22 L.Ed. 241; In re Hueber and Horton, 70 F.2d 906, 21 C.C.P.A., Patents, 1112; In re Herthel, 104 F.2d 824, 26 C.C.P.A., Patents, 1423; Sachs et al. v.

Hartford Electric Supply Co., 2 Cir., 47 F. 2d 743, 748.

In the case last above cited, decided by the Circuit Court of Appeals for the Second Circuit, it was said:

"We have not dealt with the defendant's argument that the first patent is for an 'aggregation.' Frankly, we are unable to attach a definite meaning to that word. The notion that the parts of an invention must co-operate is certainly very persisting in the patent law, and it must correspond to some underlying idea. *So far as it means that the whole complex claimed must be a unit in use, each part of which shall be necessary to the common result, we can understand it.* * * *" (Italics ours.)

It is clear to us that the main furnace and the movable furnace do not in any way co-act to secure a unitary result.

As stated by the Solicitor for the Patent Office in his brief,

"In appellant's apparatus the two furnaces can never contribute to any unitary result. When one furnace is in operative position, the apparatus is complete and glass is produced which is in no way modified by the fact that there is another furnace which, if the operator desires, may some day be substituted for the one in use. Each furnace, when used, performs its own function in its own way and neither of them affects in any way the manner in which the other cooperates with the other parts of the apparatus. One furnace is used to produce one kind of glass under certain conditions and the other is used to produce another kind under other conditions. There is nothing which involves the use of both of them which could properly be considered a unitary result."

■ We are in agreement with the Patent Office tribunals that each of claims 1, 2, and 3 is aggregative, and said claims were properly rejected.

We have examined the cases relied upon by appellant, and for the most part they are distinguishable from the case at bar.

In the case of In re Herthel, supra, although there was no co-action between certain steps of the process claimed, each of the steps did contribute to the unitary result, viz., the securing of a larger quantity of gasoline from high-boiling petroleum oil than had been possible by the teachings of the prior art.

Appellant cites a number of cases involving machines and apparatus containing parts which were alternatively used, claims to which were held not to be aggregative. Illustrations of such are knitting machines, cash registers, tabulating machines, etc. In each of such cases the parts alternatively used contributed to a unitary result; in other words, the machine or apparatus could not successfully function without the use of alternative parts.

Such is not the case with respect to the apparatus before us. Without the use of the movable furnace and day tank, the apparatus functions in exactly the same way as it does when the movable furnace and day tank are employed, the only difference being that a lesser amount of sheet glass will be manufactured than when the continuous tank is employed.

A case which, in principle, is closely analogous to the case at bar is that of In re Dougherty, 79 F.2d 920, 921, 23 C.C.P.A., Patents, 714. That case involved a gas water heater. The alleged invention there involved consisted in the provision of a "plurality of interchangeable gas burners * * * of respectively different maximum capacities," so that the amount of gas consumed could be regulated according to the needs of the operator. Claims were made embodying this alternative use of the gas burners in the water heater, which claims were rejected by the Patent Office tribunals as being aggregative. In affirming this ground of rejection we quoted with approval the following from the decision of the Board of Appeals in that case:

" * * * These claims include a plurality of interchangeable gas burners only one of which would obviously be used for the production of hot water under a given set of conditions. The other burners might be miles away in the storehouse of the service company. While claim 11 includes a changeable baffle, this expression is broad enough to cover a baffle having removable sections all of which might be used under certain circumstances.

"In contending for the patentability of claim 11 and the claims which depend upon it, appellant has cited certain decisions of this Board which on their face seem to be directed to quite an analogous set of circumstances. In any combination claimed we think it essential that all recited elements shall be capable of cooperation to produce some unitary result."

It will be observed that in that case the multiplicity of burners permitted the amount of gas consumed to be adjusted to specific requirements; but the gas burners were

never used at the same time or in the same operation, and there was no unitary result. So in the case at bar there is no unitary result obtained by the use of the two furnaces and the continuous and day tanks, nor are they ever used at the same time or in the same operation.

We are confident that the Patent Office tribunals did not err in holding that claims 1, 2, and 3 are unpatentable upon the ground of aggregation. Therefore it is unnecessary for us to consider the holding of the Board of Appeals that claims 1, 2, and 3 are not allowable over the cited prior art.

In accordance with appellant's motion the appeal as to claim 9 is dismissed, and the rejection of claims 1, 2, and 3 upon the ground of aggregation is affirmed.

Affirmed.