36 C.C.P.A.(Patents)

### Application of BROUWER.
### No. 5603.

United States Court of Customs and Patent Appeals.
June 28, 1949.

John G. Sbarbaro, Washington, D. C., for appellant.

W. W. Cochran, Washington, D. C. (H. S. Miller, Washington, D. C. of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 5, 7, and 11, drawn to a bearing structure, for misjoinder with allowed claims 3 and 13, which were drawn to a method of lubricating a bearing, and claims 12 and 14 as aggregations of the subject matter of the allowed claims and the substance of claims 5, 7, and 11, in appellant's application relating to a sealed antifriction bearing and a method of lubricating it.

Two references were cited by the Primary Examiner as illustrative of the classification of the subject matter claimed. They were not mentioned by the board, and as will hereafter appear, we need not consider them here.

Claims 3, 5, and 14 were considered illustrative by the board: They read:

3. The method of lubricating an antifriction bearing provided between its race rings with a closure member formed of a resilient imperforate mass of felted fibers, which consists in piercing a small hole through said closure member by a sharp-pointed hollow needle that yieldably presses the fibres aside and passes between the fibers to wipe off the needle and to make for itself a temporary, previously non-existing hole so small that the fibers will resiliently close said hole and again wipe off the needle as the needle is withdrawn from the closure member, and feeding lubricant through said needle into the bearing before the needle is withdrawn.

5. In a device of the character indicated, a pair of bearing members having a lubricant chamber therebetween, a sealing washer composed of an imperforate resilient material closing an end of the lubricant chamber, and a shield carried by one of the bearing members adjacent to said sealing washer and having a through aperture exposing a small area of the sealing washer and accessible at the outside of the bearing whereby a hollow needle may be inserted through said aperture to pierce a hole for itself through the resilient material and deliver lubricant into the lubricant chamber.

14. The method of providing for lubrication of a sealed antifriction bearing of the type wherein the space between the race rings is sealed up by a resilient imperforate sealing washer protected on the outside by a shield, which consists in providing the shield with a small through aperture to expose a small portion of the resilient washer, inserting a sharp-pointed, lubricant conducting needle through the aperture, and thrusting the needle inwardly to pierce for itself a temporary, previously non-existing hole through the resilient washer for injection of lubricant into the bearing, the needle and the pierced hole being so small that the temporary hole will close up and disappear as the needle is withdrawn, the insertion of the sharp-pointed needle wiping off dirt and the withdrawal wiping off lubricant.

Permanently sealed antifriction bearings are widely used in industry. In the course of long usage or under conditions of high bearing temperature the sealed-in lubricant oxidizes and decomposes forming a tar-like deposit which is a cause of subsequent bearing failure.

Bearings of that type are constructed so that yieldable seals of some resilient material such as felt confine the lubricant to the area occupied by the rolling members between the race rings. To hold the deformable seals in position and to protect the bearing from dust, water and other foreign matter, the sides of the bearing are provided with permanently mounted metal seals.

Appellant solved the problem of preventing bearing failure in permanently sealed antifriction bearings due to the cause we have mentioned by providing small openings in the outer metal seal, and inserting therethrough a needle-shaped lubricant-feeding member of a pressure lubricator. The slim needle-like nose of the member

pierces the inner seal of resilient material and permits the injection of grease to renew the lubricant therein. When the needle is withdrawn, the resilient imperforate inner seal closes the aperture produced by the needle and the bearing retains its permanently sealed quality. Affidavits of record establish that such a renewal of the bearing lubricant greatly increases the life of the bearing.

The examiner in the first office action on the application required division among three groups of claims: I, consisting of the claims directed to a method of lubrication; II, consisting of the claims drawn to the bearing and seal construction; and III, consisting of claims drawn to a pressure lubricator.

Appellant elected not to prosecute the claims of Group III. The Classification Examiner approved the requirement for division between claims of Group I (claims 1-3, 13) and Group II (claims 5, 7, 11) provided claims of the type of claim 12 were subsequently not allowed, stating that the latter claims include the subject matter of the method (Group I claims) and the article (Group II claims). The Classification Examiner supported his decision by saying:

The method of group I is applicable to any bearing having an imperforate resilient member as defined therein. Insofar as this method is concerned, the specific structure of the bearing and the shield is immaterial. The inventions are thus distinct and are separately classified and searched.

Appellant objected to the requirement for division, but elected to prosecute the claims of Group I, and claims 3 and 13 of that group were allowed. He also retained claims 5, 7, and 11 of Group II on the basis that should they not be allowed to go to issue in the same patent with Group I claims, the requirement for division would be appealed. Appellant added claim 14 to his application by an amendment at the time of his election of Group I, including claims 12 and 14 therein as drawn to a "method of lubricating."

The examiner made the rejection of claims 5, 7, and 11 final on the basis of misjoinder, and the rejection of claims 12 and 14 final on the basis of aggregation. Claims 5, 7, and 11 were not considered by the examiner on their merits.

Since the Classification Examiner had conditioned his approval of the requirement for division as between Groups I and II on the non-allowance of claims 12 and 14, the appellant in his appeal to the board first attacked the examiner's rejection of those claims, and he makes that the first point before us on appeal.

The examiner based his rejection of claims 12 and 14 for aggregation on the grounds (1) that they provided in addition to the method of lubricating the bearing, for "providing the shield with a small through aperture" (claim 14), and "making a small aperture through the metal washer" (claim 12) which is a manufacturing step; and (2) that bearings provided with "such a shield" could be lubricated by other methods, as by spraying oil into the openings in the metal outer shield, or by immersing the bearings in a lubricant.

Appellant in his brief before the board took the position that claims 12 and 14 are each "directed to the method of providing for lubrication" of the bearing, and hence are not aggregations. The examiner filed a reply to appellant's brief with the board reiterating his position that the provision of an aperture in the claim with the lubricating process is aggregative.

The board found no error in that holding stating that the method of "providing for lubrication" refers to the bearing and its manufacture whereas the portion of the claim referring to the insertion of the lubricating needle concerns the lubrication of the bearing.

Before us appellant cites an affidavit of record by Samuel R. Large, inventor of sealed antifriction bearings protected by U. S. patents 1,917,987 and 1,917,988 to the effect that 81 million sealed antifriction bearings protected by those patents have been sold. Appellant urges that claims 12 and 14 should be considered as describing a method "of treating for lubricating purposes" such assembled bearings, hitherto containing no provision for lubrication after assembly. He contends that applying

the method of his claims 12 and 14 to such assembled bearings is all that is necessary to provide for their lubrication, but that all of the steps recited in the claims would be necessary; and that applying that series of steps to such bearings produces a new and useful result while the omission of any step would not. The provision of the aperture in the outer seal is a necessary part of the method, he contends, for without it the insertion of the needle and injection of the lubricant would be impossible.

Finally, appellant states that claims 12 and 14 are merely more limited claims than allowed claims 3 and 13, and "include the preliminary step which is necessary in the case of all sealed-up bearings commercially produced prior to appellant's invention." He cites Ex parte Carlson, 68 U.S.P.Q. 336, a Patent Office Board of Appeals decision (1945) holding that it was error for the examiner to reject claims as aggregative on the ground that there was no necessary operative relation between a direction card and pitch and bank indicators in a flight indicator device with horizontal and directional gyros in side-by-side relation where the space relation and form of the indicating elements produced the unitary result of indicating the attitude of the aircraft in flight. The board in that case relied on Sachs et al. v. Hartford Electric Supply Co., 2 Cir., 47 F.2d 743, at page 748, where, Judge Learned Hand, speaking for the court, said inter alia concerning aggregation, "The co-operation of the means necessary to create an invention is to be measured by the purpose to be fulfilled, not by the interaction of the parts. Each factor must indeed be a condition to that result, but the whole may be a mere assemblage; the co-operation between them all may be no more than their necessary presence in a unit which shall answer a single purpose. Therefore, we can find little advantage in a discussion of what is or what is not an 'aggregation.' In patents, as in other branches of the law, the question is of the interests involved; inventions depend upon whether more was required to fill the need than the routine ingenuity of the ordinary craftsman. Such a standard is no more of a will-o'-the-wisp than others which the law adopts, reasonable care, reasonable notice and the like; the effort is to fix that standard by recourse to average propensities, dispositions and capacities. Any attempt to define it in general terms has always proved illusory; it is best to abandon it."

This court has had occasion to consider that case as it concerns the rule on aggregation several times. The cases of In re Lewis, 129 F.2d 560, 29 C.C.P.A. Patents 1133, and In re Herthel, 104 F.2d 824, 26 C.C.P.A. Patents 1423, quote with approval from the portion of the opinion supplying the matter we have here quoted. In re Holslag, 171 F.2d 323, 325, 36 C.C.P.A. Patents 753, decided by a unanimous court this term, comments on the Sachs case "in which the court stated that it is unable to attach a definite meaning to the word 'aggregation' and indicated that the refusal of claims on that ground should be abandoned. That decision, however, cannot be considered controlling here, especially in view of the decision of the United States Supreme Court in the case of Reckendorfer v. Faber, [92 U.S. 347, 23 L.Ed. 719]."

The foregoing remarks by this court in In re Holslag, should, as the court intended them, be limited in their application to a refusal to go as far as the Second Circuit seemed to suggest in the Sachs case, viz., abandoning the use of standards such as the rule on aggregation. We plainly have no desire to forfeit the guidance of the clear and excellent exposition of the essence of invention in such cases, as hereinbefore quoted.

The solicitor refers to appellant's contention that claims 12 and 14 produce the new and unitary result of lubricating bearings produced before his invention, and states that there may be aggregation in a method claim despite the contribution of the steps to a single result, citing In re Grapp, 64 F.2d 376, 20 C.C.P.A. Patents 1042, In re Freeman, 104 F.2d 187, 26 C.C.P.A. Patents 1265, and In re Oberweger, 115 F.2d 826, 28 C.C.P.A. Patents 749. In the Grapp case, claim 3 recited a method including steps for the forming of compressed buffer material and placing

that material around the filling comprising the body of a mattress. The examiner had rejected the claim as aggregative. The board affirmed on the ground that the step drawn to forming the buffer material was not dependent on the use of that material as part of the mattress since that material might have a variety of uses in non-mattress art. The board also held that the step recited as to the method of applying the buffer material to the body of the mattress was not dependent on how the sheet was formed. The court adopted the board's view. Here by applying the principle involved in the Grapp case, we think it clear that claims 12 and 14 are not aggregative, for here the step drawn to inserting the lubricating needle is dependent on the making of the aperture in the outer metal seal for inserting the lubricating needle, as there is no other way to provide for the lubrication of the bearing if the hole is not made to admit the needle. The making of the hole has no other possible use than to cooperate with the insertion of the needle in providing for the lubrication of the bearing. In achieving the single result of the claim, both the making of the hole and the insertion of the lubricating needle through that hole and through the felt inner seal are necessary. The quoted language from the Sachs case, supra, and the Grapp case both support a holding that claims 12 and 14 do no merit rejection on the ground of aggregation.

In re Freeman, supra, is a case where the examiner had divided the claims of the application into five groups and required division between those groups. Claims 37–42 were rejected there by the examiner as "unpatentable associations of several features." The board in its first and second decisions therein had interpreted the examiner's decision as a piecemeal action on the merits, and it thereafter filed a supplementary decision withdrawing its statements to that effect and also withdrawing any inference indicating approval of such a rejection. In its supplemental decision therein, the board selected claim 40 as representative of claims 37–42, and held that it included a specific improvement in winding and unwinding means set forth in certain group 1 claims and also specific safety means recited in groups 4 and 5. The board considered claims 37–42 as "linking claims" and held that although claim 40 recited the synchronization of the winding means with the movement of the die carriage of the shoe ornamenting machine in suit, any printing machine would provide for synchronization of certain of its parts and therefore the claim could not be regarded as "establishing a patentable cooperation between the winding and unwinding mechanism and the die support and safety means as claimed in different groups." The board concluded there that the applicant could not introduce and rely on the linking claims to force an action on the merits of groups of claims concerning which the examiner had required division before an action on the merits and held that when claims 37–42 came again before the examiner he should consider them without prejudice except insofar as any effect the final decision as to the requirement for division might have on them. The court's decision in that case makes no further reference to claims 37–42 after quoting from the board's supplementary decision from which quotation the foregoing matter herein concerning those claims has been taken. The court affirmed the requirement for division, and the solicitor in citing that case here concludes that "The presence of the linking claims did not prevent this Court from affirming the * * * requirement of division." We think it important, however, that the board based its decision on the finding that the relationship of synchronization between the winding means and the safety means was not new in printing machines and therefore no patentable cooperation existed. Here the cooperation of the step of making the hole and the step of inserting the lubricating needle therethrough does not appear of record to be old. It does appear of record that the process of lubricating by insertion of the needle through the inner felt seal is patentable. Despite the quoted statement of the Classification Examiner, despite the examiner's finding that bearings provided with a metal shield could be lubricated by other methods, and despite the board's general affirmance of the exami-

ner's decision, we hold it to be demonstrably clear that appellant's inventive lubrication process is the only effective method appearing of record for the lubrication of such permanently sealed bearings without dismantling them, and it is manifestly impossible for that process to be applied unless provision is made for its application by making the aperture in the metal seal to admit the lubricating needle. Unless the aperture is made in the outer metal seal, access to the inner penetrable felt seal is denied the lubricating needle, frustrating the process, declared by the Patent Office to be inventive, at the threshold of application. Clearly, In re Freeman, supra, is no precedent for the rejection of claims 12 and 14 as aggregative.

In re Oberweger, supra, is likewise distinguishable from the case at bar. There the examiner had required division between claims relating to a method of treating the scalp and a method of cleaning the scalp. Claims 2 and 4 embracing both methods were held by the board and this court as aggregative because there was no necessary relation between the step of cleaning the scalp and the step of applying a treating composition to the scalp. But here, in the instant case, there is a necessary and dependent relation between the step of the making the aperture and the step of inserting the lubricating needle. Without the former the latter cannot eventuate. Each without the other is futile. Together they make possible the desirable and important result secured by appellant's invention.

From the foregoing consideration we think it clear that claims 12 and 14 were improperly rejected by the tribunals below as being aggregative. We might agree with the solicitor that the two claims were added by amendment after the application was filed to serve as "linking claims" in the hope that their allowance would salvage claims 5, 7, and 11 from the requirement for division. Where, however, as here, the plurality of steps in the claim are indispensable in producing a result of admitted importance to the art, to which the steps severally contribute, for which the steps are solely and dependently useful, and to which result neither without the other could make the slightest contribution, we hold that such a hope is well founded and will be realized.

As to claims 5, 7, and 11, the classification Examiner held that the requirement for division would not stand should claims of the type of claim 12 be found allowable. Likewise, the solicitor has conceded that if claims 12 and 14 be found to be directed to a legitimate and patentable combination, they overcome the prima facie showing of the independence of the subject matter of claims 5, 7, and 11 from that of the allowed claims by establishing such a dependence of the two subjects matter heretofore held to be divisible that the two are so closely related as to be claimable in the same application. We so hold, and further support our decision in this regard by reliance on In re Rundell, 55 F.2d 450, 19 C.C.P.A. Patents 932; In re Allatt, 121 F.2d 545, 28 C.C.P.A. Patents 1367; In re Krasnow, 152 F.2d 969, 33 C.C.P.A. Patents 764; Manual of Patent Office Procedure, 8th Ed., 1940, section 11.

The decision of the Board of Appeals is reversed, and as claims 5, 7, and 11 have not as yet received action on the merits, the case is remanded to the Patent Office for further proceedings not inconsistent herewith.

Reversed and remanded.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.