30 C.C.P.A.(Patents)

## In re COHEN.
### Patent Appeal No. 4592.

Court of Customs and Patent Appeals.

Feb. 1, 1943.

Theodore W. Miller, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington D. C., of counsel) for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office rejecting claims 4 to 7 inclusive, 13, 15 to 18 inclusive, 20, 22, 23, 24, 26, 27 and 28 of appellant's application for a patent.

Claims 19, 21 and 25 were also rejected by the Primary Examiner, but the board reversed his decision respecting these claims and they stand allowed.

Claims 4 and 27 are illustrative of the involved subject matter and read as follows:

"4. In an apparatus of the character described, the combination of an alternating current energized electronic tube circuit and a grid circuit therefor including an electrode adapted to be contacted by a flame for controlling the potential applied to the grid in accordance with said flame and means for applying an alternating potential to said grid through the flame."

"27. The combination of ionized contacting path means, an electronic device including a plate circuit responsive to normal presence of an ionized path to provide one predetermined current level and responsive to a diminution of said path to provide another predetermined level, said device and first means having means associated therewith for causing the plate circuit to assume a third predetermined level in response to grounding of said first means and control means in plate circuit operable in accordance with said levels."

The references cited are:

Knowles, 1,809,280, June 9, 1931;

Breisky et al., 1,899,744, February 28, 1933;

McDill, 1,980,816, November 13, 1934.

As is apparent from the above quoted claims, appellant's alleged invention relates to an electrical system. With respect thereto, the Board of Appeals in its decision stated: "The appealed claims relate to an electrical system for controlling the burner of a furnace in accordance with the condition of the pilot light. Applicant's system provides as one condition that if the pilot light is burning the main burner may operate, as a second condition, if the pilot light is out the main burner will be automatically turned off and as a third condition, if the electrode that stands in a position in the pilot flame should become disarranged to contact with the pilot burner to produce a short circuit the main burner will be turned off through a supplemental relay."

The control system shown by appellant operates on alternating current. Of the claims before us, Nos. 4 to 7 inclusive and 15 were rejected by the examiner upon Knowles in view of McDill. Claims 5 to 7 were further rejected as drawn to new matter, as were claims 17 to 21, 24 and 26 to 28. Claims 13 and 16 were rejected as broader than appellant's invention. Claims 17 to 20 and 23 to 28 were further rejected as vague and indefinite. Claim 22 was rejected as "vague, indefinite and broader than appellant's invention." Claims 23, 26, 27 and 28 were further rejected as unpatentable over the patent to Knowles.

All of the claims were further rejected upon the ground of multiplicity.

During the prosecution of the application certain amendments thereof were made. The Board of Appeals reversed the rejection of the examiner based upon new matter except as to claims 17, 18 and 20. As to these three claims the board affirmed the decision of the examiner holding that they were drawn to new matter not disclosed in the application as filed. It also affirmed the decision of the examiner rejecting claims 4, 5, 6, 7 and 15 upon Knowles in view of McDill, but reversed his decision with respect to claim 25 and held that the same was allowable. It also reversed the examiner's rejection of claims 13 and 16 upon the ground of being broader than the invention, but with respect to these claims the board further stated: "The rejection of claims 13 and 16 upon Knowles taken with Breisky et al. is affirmed. Invention is not believed involved in so broadly merely associating a safety or lock out relay such as shown by Breisky et al. with the system of Knowles. In fact Knowles has an equivalent element in the latch 95 which automatically locks the burner in off condition when turned to that position by the rest of the system."

We find nothing in the record to indicate that the examiner rejected claims

13 and 16 upon Knowles taken with Breisky et al., but it was competent for the board to reject claims upon a new ground and appellant has not taken exception thereto other than as to the merits of the rejection.

The board reversed the examiner's decision holding that claims 17, 18, 20, 23, 24, 26, 27 and 28 are vague and indefinite but affirmed his decision in that regard with respect to claim 22; it affirmed the decision of the examiner rejecting claims 23, 26, 27 and 28 upon Knowles; it reversed the examiner's rejection of all of the claims upon the ground of multiplicity.

All of the references relate to electrical control systems. The patents to Knowles and to Breisky et al. relate primarily to the use of such systems in connection with furnaces using a liquid or gaseous fuel.

The patent to Knowles discloses a system employing direct current; the patent to McDill discloses the employment of an alternating current in the operation of his system.

With respect to the disclosure in the patent to Breisky et al., appellant challenges the statements of the examiner with respect to the functioning of the structure there disclosed.

A detailed explanation of appellant's system and the systems disclosed by the references could be understood only by a reproduction here of many drawings, which, in view of certain conclusions reached by us, we deem unnecessary.

Such discussion of the references as is deemed necessary will be had in the consideration of the various grounds of rejection of the claims.

■ Before proceeding to a discussion of the claims we would observe, as is apparent from the hereinbefore quoted claims, that the questions involved are highly technical, involving an intimate knowledge of the electrical art. Practically all of the record consists of matters addressed to those skilled in the electrical art, and presumably the Patent Office tribunals passing upon appellant's application were thoroughly familiar with the art involved. Therefore, in accordance with the general rule concerning such matters, we would be warranted in reversing the decision appealed from only if it appears to us that such decision is manifestly wrong. In re Bertsch, 132 F.2d 1014, 30 C.C.P.A., Patents, ——, and cases cited.

We now come to a consideration of the grounds of rejection of the various claims.

■ As hereinbefore stated, claims 4, 5, 6, 7 and 15 were rejected upon the patent to Knowles in view of the patent to McDill.

Both the examiner and board held that it would not involve invention to change the direct current system of Knowles to an alternating current system as taught by McDill, and that this group of claims would read upon Knowles, so changed.

The examiner expressly held that such substitution would be within the skill of an electrician.

Appellant challenges this holding and insists that "To make McDill function in Knowles would involve invention and be far beyond the expected ability of an electrician without invention."

Upon the record before us we cannot find that the Board of Appeals was manifestly wrong in holding that it would not involve invention to substitute the alternating current employed by McDill for the direct current employed by Knowles. There being no other controversy with respect to the group of claims above set forth, the decision of the board with respect thereto will be affirmed.

With respect to claims 13 and 16, held by the board to be unpatentable upon Knowles in view of Breisky et al., it is the contention of appellant that the examiner and the board wrongly interpreted the disclosure of Breisky et al.

This patent contains a disclosure, as a part of the system, of means of shutting off the fuel supply in the event, among other things, of current leakage. The examiner and the Board of Appeals held in effect that it would not involve invention to incorporate the structure so disclosed in the structure embodied in Knowles.

Appellant challenges the statement of the examiner and of the board regarding this feature of the Breisky patent. As to just what would happen in the event of the grounding of the flame electrode of Breisky et al. is, in view of the complicated circuits, switches and relays there shown, a very highly technical question.

The Breisky et al. specification clearly states that in the event of low leakage resistance his structure will operate to shut down this system, and by references to the drawings points out how his system would operate to bring about this result.

While this patent does not specifically refer to ground leakage, we are unable to hold that the Patent Office tribunals were manifestly wrong in holding, in effect, that the Breisky et al. structure would operate to shut off the fuel supply in the event of leakage caused by grounding, as well as leakage from any other cause.

For the reasons stated the decision of the board with respect to claims 13 and 16 will be affirmed.

With respect to claims 17, 18 and 20 held by both of the Patent Office tribunals as drawn to new matter, the Board in its decision stated:

"An amendment was proposed comprising several typewritten pages and several additional complex figures involving a theory of relative phase shifting in respect to the potential applied to the grid. After careful consideration we are in full agreement with the examiner's conclusions that the proposed amendment and certain of the claims include new matter in some of this detail. It is not believed sufficient that applicant may theoretically arrive at such conclusion as being true of the operation of his device. It is a simple fact that certain of the features were not originally disclosed and theoretical considerations are not enough to support them.

"Concerning the rejection of the claims, we find the rejection of new matter properly applied to claims 17, 18 and 20. We find other claims rejected on this ground to involve no more than the mere statement found in the first line of page 5 of the specification that under one condition the two potentials applied to the grid may be at 180 degrees apart, that is, exactly opposed and simply neutralizing each other. Such relatively simple proposition appears warranted by the original disclosure. We do not therefore approve the rejection of claims 5, 6, 7, 19, 21, 25, 26, 27 and 28 upon the ground of new matter but as noted, affirm the rejection of claims 17, 18 and 20."

Claim 18 is illustrative of this group of claims and reads as follows: "18. In an apparatus of the character described, an electronic tube circuit having an alternating current energized output circuit and an input control circuit having an ionized path contacting means, a current supply for the last mentioned circuit and a connection from said supply to said path whereby properties of said path control the phase of voltage applied to said input circuit and means associated with said tube circuit adapted to cut off a fuel supply in event of a path through said contacting means lower than a predetermined amount."

With respect to the ground of rejection being drawn to new matter, the examiner's statement stated:

"As originally filed the application recites that the only variable at the flame switch is pure resistance which will not produce a phase shift in the grid voltage. Upon grounding of the electrode, the resistance is practically zero and the grid potential is of a value, due to the voltage applied thereto from coils 17 and 19, to produce a large plate current to actuate the cut-out relay 34. When a flame is present at the pilot burner, and the electrode properly positioned, the resistance of the flame gap is increased, but due to the ionizing effect of the flame it is less than the equivalent air gap. The resulting voltage applied to the grid is of a different value than at short circuit and current of different magnitude flows in the plate circuit to actuate relay 7b. Failure of the flame increases the resistance at the flame switch to infinity and no current flows. The bias on the grid is then such that practically no current flows in the plate circuit. The various potentials applied to the grid cause different values of late current for the reason that in ordinary operation, vacuum tubes are not operated at their maximum capacity. The current output of the plate circuit is a variable depending upon the grid potential.

"Any change of phase between voltages applied to the grid, occasioned by capacitance of the flame, was not mentioned. Since the device originally shown and described would serve to produce two plate currents of different magnitudes depending upon presence of a flame, or short circuit of the electrode, and a negligible current when no flame is present, applicant is so limited. He should not be allowed to revise his specification to ascribe different functions to elements, although the same result is said to be produced in a different way. As the device would function to produce different values of plate current with the potentials of coils 17 and 18 180° out of phase, as originally specified, the inclusion of matter reciting that the potential applied to the grid through the flame changes its phase with respect to the po-

tential applied to the grid by coil 19 should be deleted as new matter."

It is appellant's contention that capacity in his flame switch is an inherent physical property of his structure as originally shown, and therefore the amendment above referred to relating to capacitance did not constitute new matter. In his brief it is stated: "If a resistance (flame) and capacitance (that inherent in the electrode and cable) are placed in parallel and both placed in series with an alternating current voltage source, the voltage appearing across the capacitance will differ in phase from the voltage across said source. This is in accordance wtih basic electrical principles. A capacity of 100 micro-micro farads easily present with an electrode .250 inches in diameter having a cable 10 feet long is sufficient to produce the phase shift for giving the intermediate plate current level required."

It will be observed from above quoted claim 18 that there is not only involved capacity in the flame switch but the properties of the ionized path must be such as to control the phase of voltage applied to the input circuit.

While appellant in his brief insists that capacitance is inherent in his original disclosure, it will be observed from the above quotation that he states the diameter of an electrode and length of cable sufficient to produce the phase shift, for giving the intermediate current level required. Appellant's original disclosure is silent with respect to dimensions of electrode and cable, and we find nothing in the record to indicate that any diameter of electrode or any length of cable would be sufficient to produce the phase shift.

Upon the subject of inherency in the case of Hansgirg v. Kemmer, 102 F.2d 212, 214, 26 C.C.P.A., Patents, 937, we said: "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient. [Citing cases.]"

We are not convinced that capacitance of the electrode and cable sufficient to meet these claims is inherent in appellant's original disclosure, and we are unable to find error in the decision of the board respecting claims 17, 18 and 20.

The only ground of rejection of claim 22 by the board was that it is vague and indefinite. It reads as follows: "22.

In an apparatus of the character described, an electronic tube circuit having alternating current power means including an extended conducting path contacting means and stabilizing means for preventing detrimental electrical effects which may appear upon said means from causing detrimental function of the electronic apparatus."

With respect to this claim the examiner stated: 'Claim 22 was rejected as vague, indefinite and broader than applicant's invention. Line 2, 'conducting path' is an intangible element. Line 3, 'contacting means' is inapt. The claim is broader than applicant's invention since it is in fact a single means claim. The new element is the 'stabilizing means' added by amendment. The novelty is in this means and not in its association with the tube circuit. It is defined only by the statement of its function. It includes every form of safety device which may be used on any alternating current tube circuit, such as fuses and lightning arresters, regardless of where located. Applicant is not entitled to claim all means for accomplishing a desired result merely because he might be the first to use any means to accomplish the result."

The board in affirming the rejection of this claim upon the ground of indefiniteness stated: "We, however, affirm the rejection of claim 22 on the ground of being vague and indefinite as a whole. It is not clear what part of the system might be regarded as stabilizing means for preventing detrimental electrical effects. The examiner states that if stabilizing means can be something found in the proposed amendment, it appears to be new matter."

Appellant's brief states that "stabilizing means" in the claim refers to resistors 22 and 23 of his specification. The only function of the resistors stated in his application is that they are "used to limit the amount of grid current flow below the safe grid dissipation of the tube used." While appellant's brief states that said resistors also perform other specified functions, they are not mentioned in his disclosure, and in our opinion the term "stabilizing means" does not clearly point to said resistors or any other means described in his application.

We are of the opinion that, in the use of the term "stabilizing means" in claim 22, appellant's application fails to make a disclosure sufficiently definite to satisfy

the requirements of Section 4888 of the Revised Statutes, U.S.C., Title 35, Section 33, 35 U.S.CA. § 33.

See General Electric Co. v. Wabash Appliance Corp. et al, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

Claim 23, rejected upon Knowles, reads as follows: "23. The combination of ionized path contacting means, an electronic device including a plate circuit responsive to all changes in said path, said plate circuit including control means."

In our opinion this claim reads directly upon Knowles as held by the Patent Office tribunals. Appellant contends that the plate circuit of Knowles is not responsive to all changes in the ionized path, but our view is to the contrary. Knowles' plate circuit does not have control means covering all changes in the ionized path but claim 23 does not so provide. The claim is met by Knowles for he discloses control means for some changes in the ionized path and that is all that the claim requires.

Claim 26 was also rejected upon Knowles and reads as follows: "26. The combination of ionized path contacting means, an electronic device including a plate circuit responsive to a plurality of conditions of the ionized path to provide a plurality of predetermined current levels, said circuit responsive to normal presence of such path to provide one predetermined level and responsive to leakage of first means to provide a second predetermined level and means in said circuit operable at each of said levels."

A plurality of conditions as recited in the claim means more than one. Knowles clearly discloses two conditions of the ionized path, and we believe that he also discloses two predetermined current levels, and means in the circuit operable at each of said levels.

Therefore the rejection of this claim will be affirmed.

Claims 27 and 28 also rejected upon Knowles are very similar in character.

It will be observed that claim 27 hereinbefore quoted embraces a plate circuit responsive to changes in the ionized path to provide two predetermined current levels, and means to cause the current in the plate circuit to assume a third predetermined level in response to grounding of the contacting means, and control means in the plate circuit operable in accordance with said levels.

With respect to the rejection of these two claims the examiner stated: "Claims 27 and 28 were rejected as unpatentable over Knowles. Fig. 2 of Knowles shows a vacuum tube circuit responsive to a flame at the electrode. Presence of a flame produces a current in the plate circuit. Thus Knowles has two current levels. One when the flame is out and the other when the flame is present. If the electrode of Knowles became grounded, the examiner is of the opinion that the plate current would be increased to a greater value than that resulting from the presence of a flame. The change in bias on the grid 65 is due to battery 123 and the condition of the circuit leading from it to the grid. Changes in the resistance of this circuit produce changes in grid voltage and corresponding changes in plate currents. If the resistance of the flame switch is zero by reason of a short circuit, the grid would have impressed thereon the maximum voltage from battery 123. If the flame ionized the gap the resistance would be greater and the grid potential due to battery 123 of a lesser value. If no flame is present no potential is applied to the grid by battery 123. *Since in normal operation vacuum tubes will vary their plate circuit output with a change in grid potential, three current levels are attained.*" (Italics ours)

The Board of Appeals in affirming the examiner's rejection of these claims upon Knowles merely stated: "This ground of rejection is affirmed. Knowles clearly provides two sources of different electrical potentials to bias the grid, namely, 111 and 123."

It is true, as stated by the examiner, that Knowles clearly shows two current levels. It would also appear to be true, as stated by the examiner, that if Knowles' electrode became grounded the plate current would be increased to a greater value than that resulting from the presence of a flame, and thus a third level would result. However, it seems clear to us that, so accepting the examiner's analysis of Knowles, the third current level occurring upon shorting of the electrode would merely result in continuing the supply valve position existing under normal operating conditions; in other words, it appears to us that with a shorting of the electrode, the circuit controlling the supply valve of Knowles would continue to be energized and his supply valve would.

remain open. Appellant's device, however, upon the shorting of the electrode will so operate as to close the supply valve.

This seems so clear to us that we feel compelled to hold that the board was manifestly wrong in affirming the examiner's rejection of claims 27 and 28 upon Knowles and that the claims should be allowed.

There remains for consideration claim 24, which reads as follows: "24. The combination of ionized path contacting means, electronic apparatus operable therefrom and provided with an alternating source of power of a plurality of different phases of potentials, such an apparatus including control means, and means whereby said path may control the differences in said phases to correspondingly control said control means."

The only reason of appeal with respect to this claim reads as follows: "7. The Board erred in not allowing claims * * * 24 * * *."

■ Ordinarily we would be compelled to hold, under a long line of decisions of this court, that this reason of appeal is too general to permit us to give any consideration to claim 24.

However, the facts appearing in the record with respect to this claim present a very unusual situation.

Appellant's brief states: "The Board of Appeals apparently overlooked action on claim 24 entirely but probably intended to allow it for the reasons (Rec. 43) that caused the Board to reverse the Examiner as to claim 25."

The decision of the board concludes with the following statement: "The decision of the examiner is affirmed to the extent indicated as to the rejection of all the claims, except 19, 21 and 25, as to which, the decision of the examiner is reversed."

Claim 24 was rejected by the examiner upon only two grounds:

1. As being drawn to new matter.

2. As being vague and indefinite.

With respect to the first ground of rejection the board held as hereinbefore quoted that the rejection by the examiner upon the ground of new matter properly applied only to claims 17, 18 and 20, and although claim 24 was not specifically mentioned in this connection, it is clear that the board intended to reverse the rejection of all of the claims upon the ground of new matter except claims 17, 18 and 20.

Therefore we must hold that the rejection of claim 24 upon this ground was reversed by the board.

The only other ground of rejection of claim 24 by the examiner was that it was vague and indefinite.

This ground of rejection was expressly reversed by the board in the following language: "The examiner has rejected claims 17 to 21 and 23 to 28 on the ground of being vague and indefinite, holding that the term "ionized path" is only an intangible element. While a stream of electrons such as may exist in a flame may be intangible, they are believed to be capable of being considered an element within the patent law. Certainly flame is a sufficiently definite thing to be thus utilized and serve as an element. This ground of rejection is not affirmed."

It therefore appears that the Board of Appeals reversed the examiner upon the only grounds upon which he rejected claim 24. Nevertheless it does not appear that the board gave consideration to the allowability of this claim. It is possible that it might have found that the claim is unpatentable upon grounds other than those stated by the examiner, although no such grounds occur to us.

■ Inasmuch as the board held in appellant's favor upon the only grounds upon which the examiner rejected this claim, the only defect in appellant's reason of appeal was that it did not state that the board erred in not making a specific ruling as to the allowability of claim 24.

As this is so apparent upon the face of the record, it is our opinion that in this peculiar situation we should hold appellant's 7th reason of appeal sufficient to warrant us in remanding to the Board of Appeals claim 24 for further consideration, not inconsistent with the views here expressed.

For the reasons herein stated the decision appealed from is affirmed with respect to claims 4, 5, 6, 7, 13, 15, 16, 17, 18, 20, 22, 23 and 26; it is reversed with respect to claims 27 and 28, and claim 24 is remanded to the board for further consideration.

Modified and remanded.