40 C.C.P.A.(Patents)

.Application of WORREST.

Patent Appeal No. 5908.

United States Court of Customs
and Patent Appeals.

Feb. 6, 1953.

Parham & Bates, Hartford, Conn. (V. A.
Dorsey, Washington, D. C. and J. B. Wil-

lard, Hartford, Conn., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection of claims 1–12, inclusive, all the claims in appellant's application for "Apparatus for and Method of Dealing with Newly Molded Glassware."

The appealed claims relate to a method and apparatus for cooling or otherwise similarly treating newly formed glassware immediately after removal from the mold of a glass making machine, prior to conveyance to a heat treating apparatus such as a lehr. In particular, appellant discloses an apparatus and method whereby each newly molded article is transferred to the first of two adjoining "dead plates," whereon it is cooled by a stream of air passing through perforations in the plate. Subsequently, the article is transferred for further cooling to the second perforated dead plate by a reciprocating push bar, while a new article is transferred from the mold to the first dead plate at substantially the same time. The first article is then transferred by a pivoted arm to an endless conveyor belt adjacent to the two plates, while the second article is transferred from the first dead plate to the second plate by the aforementioned pusher bar. At the same time, a third newly molded article is transferred from the mold to the first dead plate. Thus, while a third article is being molded, two newly molded articles are concurrently cooled, each being partially cooled at the first and second dead plates respectively. The purpose of this concurrent use of two dead plates is to enable full use of the mold capacity without any time lag when the necessary cooling time exceeds the required molding time. This procedure, of course, continues indefinitely. Appellant also discloses means, discussed more fully *infra,* whereby the article transfer mechanism may be alternately converted so that the apparatus disclosed can be used either with one or two dead plates.

Claim 6, which is one of the more specific of apparatus claims 1–6, is representative, and reads as follows:

"6. In glassware handling apparatus, a conveyor for glassware, a stationary dead plate formed and arranged to provide a first fixed station to which each article of glassware produced by an adjacent glassware forming mold may be delivered when taken out of the mold and a second fixed station adjacent to the first to which glassware may be moved from said first station and from which said glassware may be moved onto said conveyor, a transfer mechanism operable to move the glassware from said first station to said second station, a second transfer mechanism to move the glassware from said second station onto said conveyor, and means to operate said transfer mechanisms in timed relation to each other."

Claim 11 is representative of method claims 10–12, and reads as follows:

"11. In the manufacture of articles of glassware by the use of a forming mold, the method which comprises the steps of removing each such article from the forming mold while it still has sufficient heat of manufacture in the wall thereof to cause an objectionable deformation or change of shape thereof if distribution of such heat to the temporarily stiffer outer layer of glass of said wall is permitted, applying cooling fluid under pressure to the external surface of the wall of said article of glassware at a fixed cooling station on a dead plate adjacent to said mold to obviate softening of the outer layer of the outer layer of the wall by such heat distribution, and then moving said article of glassware relative to the dead plate to an adjacent fixed station on said dead plate for further treatment substantially concurrently with the de-

positing of a subsequent article at the first of said cooling stations."

The references relied on by the Patent Office are: Wardley 1,900,781 March 7, 1933; Berthold 2,182,167 Dec. 5, 1939; Berthold 2,282,848 May 12, 1942.

Each of the Berthold patents shows a glassmaking machine having a mold and a single perforated dead plate for cooling bottles removed from the mold while a new article is being molded. The cooled article is then transferred onto a moving endless conveyor which moves past the dead plate by means of a pivoted arm similar to that utilized by appellant at his second dead plate station.

Wardley shows an arrangement somewhat similar to that in the Berthold patents, but discloses the use of a second air blast, instead of a transfer arm, to remove articles from the single dead plate onto a moving conveyor belt.

The examiner rejected claims 1–6 and 10–12 as unpatentable over Wardley or either patent to Berthold on the ground that the references disclosed the claimed method and apparatus in all particulars except that they show a single dead plate having only one cooling station instead of two. The examiner was of the opinion that the provision of the second cooling station is a mere duplication of the structure of the prior art and hence is not inventive or patentable. The board agreed with this holding and accordingly affirmed the examiner. The board also added a new rejection of claims 10–12 based on the theory that those claims were directly readable in terms on the cited references.

When the glassware is formed in the mold the outer surface of the article is chilled so that a thin skin is formed which is sufficiently rigid to support the shape of the bottle. However, the internal heat within the bottle tends to flow outwardly, thereby softening this skin and resulting in sagging and distortion. This softening may be avoided by retaining the newly molded article in the mold for a longer time, but that expedient would, of course, fail to make full efficient use of the mold. To avoid this, a perforated dead plate was provided in the prior art to which a newly molded article could be removed and there cooled to stability by a flow of cooling air through the perforations of the dead plate. This is all fully disclosed in Berthold patent 2,182,167.

Counsel for appellant contends that there are two points of novelty which render the appealed claims patentable over the cited art. Firstly, appellant uses two stability cooling stations; secondly, he has provided transfer means for handling bottles concurrently. Counsel's basic contention is that there is an inventive concept in the recognition by appellant that a second dead plate could be provided to cool two bottles concurrently when the optimum dead plate cooling time exceeds the optimum molding time, thereby enabling full utilization of the mold's capacity.

■ It is true, as argued by counsel, that mere simplicity when viewed after disclosure does not necessarily negative invention or patentability; and that discovery of a problem and the concept of a new improvement for solving it must also be considered along with the actual physical means of achieving the solution. We have recently recognized the force of such argument in reversing the Patent Office tribunals in In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982, and In re Osplack, 195 F.2d 921, 39 C.C.P.A., Patents, 932. However, we think these rules inapposite in this case. The Berthold patent 2,182,167, as noted above, fully discloses the nature of the basic problem here involved. Moreover, it is our opinion that this reference indicates the essentials of the solution. It is there stated, *inter alia:*

"An object of the present invention is to provide an apparatus for adequately cooling the walls of the finally formed article by the application of a cooling fluid or medium thereto to obviate objectionably sagging, distortion or change of shape of the walls of the article after such article has been removed from the final forming mold. The required time of chilling contact of the walls of the article with the final forming mold may thus be decreased.

This permits speeding up of production of successive articles, the manufacture of which involves the use of the same final forming mold."

■ It is our opinion that appellant has only carried forward the teaching of the Berthold patent, and has only produced a device which is within the realm of performance of a skilled mechanic in the art. Nor are we convinced that appellant's new device accomplishes any new or unexpected result. Therefore, we concur with the Patent Office tribunals that the apparatus and method of claims 1–6 and 10–12 do not involve invention over the cited art, and hence are not patentable. In re Kaufmann, 193 F.2d 331, 39 C.C.P.A., Patents, 769. See also In re Long, 153 F.2d 110, 33 C.C.P.A., Patents 797, which involved a situation analogous to that in the instant case.

■■ Counsel for appellant points out that the references cited are 10, 13 and 19 years old, respectively. It is contended that failure to discover appellant's method and device for a period of almost 20 years indicates that invention is present. In attempting to ascertain the presence or absence of invention, the courts should resort not only to the capacity of the skilled mechanic in the art, but also to the history and underlying state of the art at about the time of the alleged invention, the occasion for it, and the success it has attained. In re Bowden, 183 F.2d 115, 37 C.C.P.A., Patents, 1201. Indeed, we share with Judge Learned Hand[1] the belief that a careful examination of the history of the art may often be the surest guide to determining the presence or absence of invention.[2] However, we cannot rely on that test when the record is silent as to any relevant factual data. In re Yount, 171 F.2d 317, 36 C.C.P.A., Patents, 775. Although it is a factor to be considered, the mere fact that a reference is 10 to 20 years old does not prevent it from being properly used as a reference,[3] and that in itself is, as a rule, insufficient to indicate the state of the art or the presence of invention.

Accordingly, we hold there was no error in the board's decision as to claims 1–6 and 10–12. In view of this conclusion, we think it unnecessary to discuss the board's added rejection of claims 10–12.

We turn now to consideration of claims 7, 8 and 9. Those claims are directed to the above-mentioned article transfer means associated with the dead plates, and the mechanism for operating the same. Appellant has provided a cam-actuated mechanism and linkage which includes, *inter alia*, two upright shafts for alternately mounting either a short or long pivotable transfer arm. A short arm may be mounted on one of these shafts to push bottles from the second dead plate onto the conveyor, this arm acting in conjunction with another reciprocating pusher arm which transfers bottles from the first to the second dead plate. If, in a particular case, only one dead plate need be used for cooling the newly molded articles to stability, both these arms may be detached and a long arm is mounted on the second of the aforementioned upright shafts. The above-mentioned linkage is such that the long arm when mounted on the latter shaft pivots so as to sweep bottles directly from the first dead plate onto the conveyor.

Claim 9, which is representative of claims 7 to 9, reads as follows:

"9. In glassware handling apparatus, a dead plate comprising a pair of sections adjacent to each other and to a conveyor, means operable to cool glassware on each of said sections, and

1. Kirsch Mfg. Co. v. Gould Mersereau Co., 2 Cir., 6 F.2d 793; Weston Electrical Instrument Corp. v. Dejur-Amsco Corp., 2 Cir., 133 F.2d 778.

2. For a review of factors we think may be properly considered, see 69 C.J.S., Patents, § 70(a); also 69 C.J.S., Patents, § 70(d). However, it must also be noted that the record as to the history of the art before the Patent Office tribunals and this court in an *ex parte* case would almost invariably be less complete than that before a court in an *inter partes* infringement suit, due to obvious inherent differences in the nature of the two proceedings. This latter factor must also be considered by us in applying the "history of the art" test.

3. In re Jones, 195 F.2d 538, 39 C.C.P.A., Patents, 913.

glassware transfer means including two upright rock shafts adjacent to one of said sections, means to rock said shafts in unison about their respective axes, a relatively short glassware transfer arm detachably mounted on one of said shafts for operation thereby to move articles of glassware from the adjacent dead plate section onto the conveyor, and a longer glassware transfer arm detachably mounted on the second rock shaft for operation by the latter to move articles of glassware from the more remote dead plate section onto said conveyor, said arms being selectively mounted on their respective rock shafts."

The examiner rejected claims 7–9 as follows:

"Claims 7, 8 and 9 were rejected as being drawn to an aggregation on unrelated elements. These claims are directed to the modification illustrated by Figure 7. When the [long] arm 64 is mounted on the shaft 54 the [short] arm 48 is inoperative and must be removed from its shaft 49. * * *"

Thus, the gist of the rejection of claims 7 to 9 is that they are directed to a feature having interchangeable parts which are used alternatively, and therefore, *ipso facto,* the claims are drawn to an aggregation which is unpatentable.

As this court has stated before,[4] the question of what constitutes an aggregation in the patent law has been a troublesome one, and has been much discussed by the courts. Indeed, the state of the law on this question is such that Judge Learned Hand, speaking for the second circuit, has declared that he was unable to attach a definite meaning to the term "aggregation." Sachs v. Hartford Electric Supply Co., 2 Cir., 47 F.2d 743.

We have reviewed a large number of decisions on the subject, including those cited by the examiner and the board, and since we find them in conflict and difficult to logically reconcile,[5] we see no point in discussing them all in detail in this opinion.

The term "aggregation" appears to be used by the courts in either one of two different ways. It is applied in one sense to a device having two or more unrelated, independent units or elements, each of which performs its function separately, uninfluenced by and indifferent to the action of the other units. There is no essential or inherent correlation, or cooperation, or coordination of elements which mutually contribute to a common purpose or result, other than mere convenience due to juxtaposition or collection of the units in a common setting. It is applied in another sense (almost invariably preceded by a deprecating adjective as, for example, "mere aggregation") to devices which really appear to be a combination of two or more units coacting or cooperating in the full sense of the term, but which the court regarded as not displaying the exercise of invention because no new or unexpected result was produced by the combination. It seems to us that the former is the correct use of the term.[6] In the latter case, such a device should, in our opinion, properly be regarded as an unpatentable combination,[7] and not as an aggregation.

In applying the doctrine of aggregation, the courts have generally, until relatively recent years, emphasized the necessity for coaction between the component elements

---

4. In re Lewis, 129 F.2d 560, 29 C.C.P.A., Patents, 1133.

5. For a review and analysis of decisions which illustrate this very well, see "Some Notes on the Doctrine of Aggregation" by C. W. Dawson, J.P.O.S., vol. 26, no. 12, Dec. 1944. For an exhaustive review of decisions on the subject, see "Digest of Decisions on Combination and Aggregation," by Herman Berman, J.P.O.S., vol. 17, nos. 1, 2, 3, 4; vol. 18, no. 4; vol. 21, no. 9; vol. 24, no. 10.

6. For a good illustration of an aggregation in that sense, see the case of In re Holslag, 171 F.2d 323, 36 C.C.P.A., Patents, 753, wherein a welding rod holder having a chipping hammer and cleaning brush mounted thereon for convenience was held to be an aggregation and unpatentable.

7. For an illustration of an unpatentable type of combination frequently referred to in many decisions as an aggregation in this sense, see In re Lindberg, 194 F.2d 732, 39 C.C.P.A., Patents 866.

or units of a device. The fallacy of the coaction test is readily apparent when we consider typewriters, adding machines, variable speed transmission devices having selective gear trains, multipurpose machine tools having selective controls, such as automatic screw machines, etc. For this reason, we agree with those courts which have concluded that strict adherence to the requirement of coaction between elements in order to have a patentable combination is unrealistic and illogical.

In Lincoln Engineering Co. v. Stewart-Warner Corporation, 91 F.2d 757, 765,[8] Judge Evans, speaking for the seventh circuit stated, *inter alia*:

"When among the group of elements there is correlation or co-ordination of elements which mutually contribute to the same result, there may be invention, notwithstanding there are many decisions which have arbitrarily announced that patentable discoveries are not present unless there is coaction of elements which results in a new or better product.

"We are convinced that where there is *correlation, cooperation, or co-ordination resulting in mutuality of achievement of a common purpose* and contributing to accomplish a desired result, a patentable combination may well be present. Nor is it proper to say that the correlation or cooperation depends on each element's affecting each of the other elements.

"In short, in attempting to restrict aggregation to its proper field, it might be said that a combination is present if there be correlation or co-ordination of elements which mutually contributes to the accomplishment of some result and there need be no interdependency in the sense of one element being dependent on the others for functioning."[9] [Italics supplied to emphasize the gist of what we regard to be the proper test.]

■ Similarly, Judge Learned Hand, speaking for the second circuit, stated in the Sachs case, supra [47 F.2d 748]:

"* * * The notion that the parts of an invention must co-operate is certainly very persisting in the patent law, and it must correspond to some underlying idea. So far as it means that the whole complex claimed must be a unit in use, each part of which shall be necessary to the common result, we can understand it. So far as it rests upon an implied reference to mechanics, that is, that each part must give or take a strain, it seems to us a false lead. The test is more practical than that, because inventions are to answer human needs, and the elements may be mechanically inert. The co-operation of the means necessary to create an invention is to be measured by the purpose to be fulfilled, not by the interaction of the parts. Each factor must indeed be a condition to that result, but the whole may be a mere assemblage; the co-operation between them all may be no more than their necessary presence in a unit which shall answer a single purpose. * * *"[10]

■ We have before us a particular aspect of the aggregation doctrine involving elements which are alternatively and interchangeably attached to a common operating mechanism on the machine. In the case of In re Hobson, 152 F.2d 998, 1001, 33 C.C.P.A., Patents, 742, we stated:

"There are probably exceptions to the rule that elements which are only

8. Reversed on other grounds, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008. See 69 C.J.S.,Patents, § 69, fn. 47.

9. This viewpoint was restated by that court in the later case of Kalo Inoculant Co. v. Funk Bros. Seed Co., 7 Cir., 161 F.2d 981, reversed on other grounds, 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588. See 69 C.J.S.,Patents, § 69, fn. 48.

10. Although we have refused to follow the Sachs case to the point of abandoning the doctrine of aggregation, In re Holslag, supra, we have not abandoned our earlier approval of the portion of the Sachs opinion here cited. In re Brouwer, 175 F.2d 564, 36 C.C.P.A.,Patents, 1178; see also cases cited therein.

alternatively used may not form a part of a true patentable combination and the syllabus of the decision by the Board of Appeals in Ex parte Lasker, 31 U.S.P.Q. 341, may be quoted as deciding the following: 'While, as general proposition, claiming of elements which are only alternatively used may render claim aggregative, there are certain classes of mechanism which require for fulfillment of their purpose parts which are intended to be used alternatively, for instance types of typewriters, keys and reeds of organ, variable speed mechanism; alternatively-used parts contribute to unitary result and their inclusion in claim does not render it aggregative; same is true of tabulating machines and auxiliary spacing machines.' "

While this statement in the Hobson case was *dicta*, we adhere to it as sound in principle, and for a fuller understanding of its meaning we set out here the pertinent portions of Ex parte Lasker:

"While as a general proposition, the claiming of elements which are only alternatively used may render a claim aggregative, there are certain classes of mechanism which require for the fulfillment of their purpose parts which are intended to be used alternatively. In an ordinary typewriter, for instance, only one type can be used at a time and the capitals and numerals are used alternatively to the small letters. Moreover, in some typewriters, provision is made for shifting the ribbon so that the record may be printed in either of two colors of ink.

* * * * * *

"A similar situation arises in the case of variable speed transmission mechanism, such as is employed on automobiles or in similar situations. In devices of this character, no two gear ratios can be in use at the same time but an automobile without a change speed and reverse transmission would be a device without great utility.

"In all of the situations referred to, the unitary result involved may be somewhat complex but we think the alternatively used parts can be held to contribute to a unitary result, and hence that their inclusion in a claim does not render the same aggregative. * * *"

It is to be noted, however, that in the devices discussed in the Hobson and Lasker cases, the elements alternatively used are permanently mounted on a common frame with means thereon permitting alternative operation of the same by an operator. In the device here involved in claims 7 to 9, that one of the two interchangeable arms which is not in use is removed from the common actuating mechanism.

■ We do not think that fact in itself should render the claimed device aggregative and unpatentable, under the test of the Lincoln Engineering and Sachs cases, supra. We can readily visualize means whereby appellant could have permanently incorporated both the two arm transfer means and the one arm transfer means in the same machine, with additional means on the machine for shifting one or the other alternatively into use in a manner analogous to the alternative use of a variable speed gear transmission. Yet, to do so would require a considerably more complicated and more expensive transfer mechanism. Thus, it would, in our opinion, be anomalous to hold that such a transfer means would not be aggregative but that appellant's is. Moreover, such an anomalous holding could hardly be in consonance with the basic purpose of the patent grant, which is "To promote the Progress of Science and useful Arts". Art. I, § 8, U. S. Constitution. In considering patent cases the courts must not be oblivious to the technological facts of life. We are therefore of the opinion that, although the result achieved in such a case is complex in nature, there is a correlation or coordination resulting in the achievement of a single or common purpose in the broad sense. Hence, applying the tests of the Lincoln Engineering and Sachs cases, supra, we think such a device is not *ipso*

*facto* an unpatentable aggregation.[11] Moreover, there might well be the highest type of invention in the development of a device which utilizes a common mechanism to achieve two or more substantially different results by interchangeable ultimate working elements or units. On the other hand, of course, such an expedient may involve no more than the exercise of mechanical skill, rather than invention.

 In view of the foregoing, we think the board erred in affirming the rejection of claims 7–9 as drawn to an aggregation. However, the record does not in any way indicate whether the Patent Office tribunals have considered various other pertinent questions with respect to claims 7–9. Firstly, it is not clear whether they regarded the subject matter of the claims inventive over the prior art, or within the realm of mechanical skill. Moreover, assuming the office tribunals regarded the physical embodiment as inventive, it is essential that the claims adequately recite the features upon which appellant predicates patentability. In re Bisley, supra. It is also essential that the claims not be objectionably indefinite or functional. This court must hear and determine appeals of this type on the evidence produced before the Patent Office, confining its decision to the points set forth in the reasons of appeal. 35 U.S.C. § 144 (1952) [based on R.S. § 4914, 35 U.S.C. § 62 (1946)]. Therefore, we think that, in view of the present state of the record, the only proper procedure is to remand the case to the Patent Office as to claims 7, 8, and 9, for further proceedings not inconsistent with the foregoing opinion. See In re Frey, 166 F.2d 572, 35 C.C.P.A., Patents, 970; In re Cohen, 133 F.2d 924, 30 C.C.P.A., Patents, 876.

We are not unmindful of the fact that in the case of a device such as here involved in claims 7 to 9 there will be certain problems in drafting proper claims, but such problems should not be insurmountable.

In view of the foregoing, the decision of the board is affirmed as to claims 1–6 and 10–12, and reversed and remanded as to claims 7, 8, and 9.

Modified and remanded.

40 C.C.P.A. (Patents)

11. For an excellent illustration of this, see Ex parte Christensen et al., 6 USPQ 161. In that case, applicant devised a sewing machine having a common frame and driving mechanism, with interchangeable needle heads to be connected to said frame and mechanism to provide a complete machine for doing different kinds of work. The Board of Appeals reversed a rejection of aggregation, holding that there may be a patentable combination when detachable parts, although not always used, are peculiarly adapted to be interchangeably mounted on a common frame in cooperation with a common operating mechanism. Although decisions of the board are not binding on us, we regard Ex parte Christensen as a practical and sound decision.