40 C.C.P.A.(Patents)

## Application of COPPING et al.
### Patent Appeal No. 5939.

United States Court of Customs and Patent Appeals.

April 15, 1953.

732

K. Wilson Corder, Atlanta, Ga., for appellants.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

This is an appeal from a decision of the Board of Appeals affirming the Primary Examiner's rejection of claims 1 to 6 and 9 to 20 (all inclusive) relative to alleged inventive improvements claimed in a carbonator and dispenser apparatus designed for use in the soft drink industry.

It is known that appreciable problems are encountered in attempting to combine carbon dioxide and water to form carbonated water in that these compounds tend to resist being united in the first instance and seek to separate at the earliest opportunity. Maximum efficiency and optimum results as to the finished drink have, in large part, been prevented by this and other related problems.

Applicants state that it has been found that the production of the carbonated water solution is most satisfactory under certain temperature conditions (water has increasing ability to absorb gas as temperature decreases), and under circumstances where all possible water surface is exposed to the gas. The alleged invention is, therefore, mainly concerned with setting up the aforesaid conditions so that the potability of the finished product may be enhanced and the dispensing operation carried out in a more efficient and economical manner than has heretofore been possible.

Representative claims 1 and 20 of the application on appeal read as follows:

"1. In a device of the character described, a pressure tank, a distributor head therein, a plurality of pliable carbonator curtains attached to said head, a source of gas supply and a source of water supply communicating with said pressure tank.

"20. In a device of the character described, a pressure tank, a distributing header mounted therein, a flexible yielding carbonator curtain secured to said header, a water cooling element adjacent the tank and communicating with said header and curtain, means regulating the flow of water into said cooling element, a syrup tank adjacent said cooling device, the contents of both the pressure tank and the syrup tank receiving refrigeration from the cooling element, a dispensing nozzle partly positioned in said syrup tank and likewise receiving refrigeration from said cooling element, and a source of $CO_2$ gas supply to the carbonator curtain."

The Board of Appeals based its rejection of all claims in the application on appeal on the following references: Gardner 654,725 July 31, 1900; Delen 2,195,449 Apr. 2, 1940; Burk et al. 2,376,341 May 22, 1945; Tull 2,434,374 Jan. 13, 1948.

The application discloses, in general, a carbonator and dispenser wherein water is cooled and combined with carbon dioxide to form carbonated water properly refrigerated for beverage purposes. More specifically, the invention is concerned with what applicants have characterized as a "Curtain-type" carbonator, alleged to be an entirely new type of carbonator. This apparatus consists of a cylindrical container, the axis of which is vertically disposed. A series of circular troughs are located one within the other at the upper end of the container and are in stepped relation to one another; water flowing into the outermost trough will, when the trough is filled, spill into the next lower trough, such action continuing until all troughs become filled. Properly located holes in the troughs are provided so that water may be supplied to the carbonating curtains. The curtains are suspended from the lower portion of each of the troughs, and in the language of some of the claims are formed of a glass cloth material, made of a continuous filament of glass, said materials being flexible and yielding and having a wick like action which facilitates in the handling of large quantities of water in a manner most conducive to high carbonation. This feature of the apparatus, according to the ap-

plicants, is the very heart of their invention in that it teaches for the first time the application and utilization of pliable curtains which produce maximum results both as to speed and volume of carbonation. In other words (as stated by the Primary Examiner), "the purpose of these curtains is to secure more intimate contact between the water and the gas in order to facilitate carbonation."

This provision for flexible, pliable curtain members of specified material was the outgrowth of extensive experimentation on the part of the present applicants. They state that the most efficient carbonating is obtained with the thinnest possible film of water and that by reason of the wick like action of the specified curtain material, the flowing liquid is spread thinly and evenly there-across; the carbon dioxide, previously introduced to a predetermined pressure in the carbonator, is thereby more readily absorbed. In further explanation, we quote from certain of applicants' remarks as disclosed in the record:

"* * * applicants disclose and teach a structure in which water forms a definite film over the entire surface of unique carbonating curtains, and while the water is flowing over said curtains, this thin film is subjected to $CO_2$ gas, in such a manner as to absorb large quantities thereof, both a high rate of carbonation and what is more important, a high degree thereof being thereby afforded. * * *

* * * * * *

"* * * it may also be noted that additional advantages accrue in the use of curtains [flexible, yielding, and having a wick like action] in that even if the carbonator is tilted substantially, these members always tend to maintain a vertical plane, the carbonation not being appreciably slowed by any reasonable departure from a vertical plane on the part of the carbonator, itself. This is particularly important in the case of ships and airplanes, where considerable tilting may be expected to occur, and where bad results then accrue in the case of conventional carbonators heretofore known to the art."

It appears to us, therefore, that applicants are proposing what they deem to be unique carbonating curtains, the purpose of which is to unite $CO_2$ gas and water in such manner whereby maximum results both as to speed and volume of carbonation is assured, and that the uniqueness of said curtains lies in the fact that they are flexible and yielding and are made of material having a wick like action whereby the water is spread in a thin film across the large absorption surface of the carbonating curtains.

The principal reference relied upon by the board in rejecting the claims on appeal is the patent to the inventor Delen. Claims 1 to 6 and 11 to 19 were said to be either fully met by Delen or unpatentable thereover. Applicants have made a motion to dismiss the appeal as to claim 13 which motion will be considered in the course of the opinion.

The patent to Delen relates to a water cooling and carbonating device. That inventor, in part, states in his specification:

"An object of this invention is a simple and inexpensive apparatus which will quickly and efficiently cool water and charge it with carbonic acid gas and take advantage of the fact that the ability of water to absorb gases increases as its temperature decreases."

Delen shows a pressure tank provided with a distributor head therein and a wire mesh screen attached to said head. A source of carbon dioxide and a source of water is also provided which communicates with the pressure tank. The wire mesh screen is disclosed as the part in which the $CO_2$ gas is contacted with the water and hence corresponds in matter of form to applicants' carbonating curtains.

The applicants argue that a study of the patent to Delen clearly establishes that the wire mesh members of that inventor's apparatus are rigid and substantially unyielding; that the wire mesh is formed of a heavy type wire thereby making it apparent that in the normal operation of the apparatus, the water would simply run down the sides of the cylinder, tending to follow the vertical lines thereof and henceforth

would afford but little exposure to the $CO_2$ gas; that, as a consequence, it is not proper to hold that Delen anticipates the claims on appeal as there is not the remotest suggestion in that inventor's teaching of a curtain-type carbonator.

It is entirely clear to us that both the screen of the patentee and the curtain of the applicants are used as film forming means to present a large absorption surface. The essence of the controversy, therefore, would seem to amount to this: Is Delen's wire mesh screen a fair equivalent of applicants' carbonating curtains? In this connection, the Primary Examiner said:

"Applicants argue that the wire mesh members of Delen are not 'flexible', 'pliable', 'limber' or 'pliant', these terms being used in various of the claims to describe their own curtains. * * *

. * * * * * *

"It is submitted however, that 'wire-mesh members' * * * are inherently pliant. Such material is used for window screen and the size of the mesh varies from say 100 mesh to the square inch (1/10 inch spacing) up to about 4 per square inch (1/2 inch spacing) but in all forms it is relatively flexible and is distributed to the trade in rolls. Anything larger than this is not ordinarily called wire mesh. The more rigid forms are usually termed gratings. The above is a matter of common knowledge."

In furtherance of the Primary Examiner's view, the Board of Appeals, in its concurring opinion, stated:

"We are of the opinion that the wire mesh curtains disclosed in the Delen patent are 'pliable' in the broad sense of the quoted term as used in claim 1 [of the present application] and also are 'yielding', 'limber', 'flexible', 'flexible pliant' or 'flexible yielding' as recited in others of the claims and furthermore that it would not involve invention to substitute a curtain having the characteristics indicated by the quoted phrases for the wire mesh of the Delen device. Our reason for

arriving at this conclusion is that the record before us does not establish any new or surprising result emanating from the substitution of a curtain of the character claimed for the wire mesh curtain disclosed in the Delen patent. The function of the curtain as disclosed in the application is the same as the function of the curtain disclosed in the Delen patent and that is to attain such contact between the water and the carbon dioxide, as the water flows down the curtain in a thin stream, as to facilitate absorption of the carbon dioxide in the water. Appellants have not shown that any new or surprising result follows from the use of the limber, pliable or flexible materials * * *".

The sum and substance of the above-quoted language of the officials of the Patent Office appear to us to be manifestly correct. The fact that a wire mesh screen is, in fact, flexible seems to be borne out by the not uncommon sight of wire mesh screening placed in a roll preparatory to actual use. This being so, we fail to see where applicants' carbonator curtains patentably differentiate from the screen of the Delen device.

We are not unmindful of the persistent urging on the part of the applicants herein to the effect that the drawings of the Delen patent make it perfectly apparent that the wire mesh members within that inventor's device are formed of substantially heavy wire on the order of 3/4ths of an inch per square and that consequently no wick like action is possible. This conclusion, applicants believe, is justified by visually comparing the size of other elements shown in the drawings of the Delen apparatus with the size of the wire meshing also shown therein. Further, applicants have argued that the Delen drawing shows a double blast of $CO_2$ gas impinging upon the wire mesh screen without, however, said structure departing in any way from its vertical plane. Inasmuch as the blast is at relatively high velocity, as it of necessity must be, applicants reason that the wire mesh is rigid and not yielding. We have carefully considered these contentions but due prin-

cipally to the speculative and uncertain quality thereof (as no scale is shown to accompany the drawing), we are of the opinion that the proof offered is not sufficiently convincing and we are unwilling to say that the tribunals below committed error on the basis of such inconclusive proof.

As previously noted, the applicants have provided that the curtains be formed of glass cloth (claims 2 and 3) but also relate that said curtains may be formed of a variety of materials, such as linen or cotton cloth or other woven material. No limitation is believed to be intended, in connection with the material used, so long as such material possesses the wicking action which spreads a liquid thinly and evenly across the curtains.

It is our opinion that no exercise of the inventive faculty is involved in substituting a glass cloth or a cloth (claims 4 and 16) wicking agent for the wire mesh of the Delen patent. Both the wire mesh of Delen's screen and the specified material of the applicants' curtains are used for their wicking or spreading effect on the water. Furthermore, the patent to Burk of record herein relates to an apparatus for contacting liquid with vapor or gas and specifically refers to "a wicking agent or a woven mesh, such as woven wire fabric, glass cloth, etc." as a film forming means. The applicants, in their brief, argue that the Burk reference constitutes non-analogous art in that it is apparently used in the oil refining industry and further that the wicking agent is not used or contemplated to be used for the purpose of establishing thin films of liquid which are to be subjected to, and impregnated with, $CO_2$ gas. Applicants claim no invention in glass cloth, per se, but rather the use of such material, or a similar flexible material, in a carbonator. We feel that the Burk reference was properly cited for what it clearly discloses, i. e., that glass cloth is a wicking agent, and as such, may be utilized to film a liquid. We also feel that the field of endeavor pursued by Burk and that pursued by the present applicants are sufficiently related to negative an inventive concept on the part of the applicants. In any event, we feel that the Delen reference is sufficient, in itself, to deny patentability to the claims in question.

Claims 1 to 5 and 11 to 18 (excluding claim 13) were therefore, in our opinion, properly rejected by the tribunals of the Patent Office.

The remaining claims of the application —6, 9, 10, 18, 19, and 20—were, with the exception of claim 10, also rejected by the tribunals below with principal reliance being based on the Delen patent.

In their brief applicants state that "claims 6, 9, and 18 include float means for controlling the amount of water supplied to maintain a constant level of carbonated water in the tank." While this feature is clearly disclosed in the patent to Tull relating to a carbonated beverage dispensing apparatus (and this is not seriously disputed by applicants), applicants contend that such float control, when combined with the other elements of their apparatus, including the vital carbonating curtains, is a new combination giving rise to a superior result. The board was of the opinion that the consolidation claimed was of old elements without, however, any new results flowing therefrom or any new co-action occurring between the elements, and with this conclusion, we are in accord. We do not, therefore, feel that it is necessary to discuss the Delen reference in this connection.

Claim 10 reads as follows:

"10. In a device of the character described a pressure tank, a header operatively amounted therein yielding, carbonator curtains attached to said header; troughs formed in the top of said header, and apertures in said troughs sufficiently above the bottoms thereof to prevent foreign matter in the water from being carried onto the curtains, said troughs further serving to act as distributors to insure that the curtains will be evenly wetted."

The Board of Appeals applied the Gardner reference to this claim, as did the Primary Examiner, stating that the construction shown in Figure 1 of Gardner discloses a chamber corresponding to, and being the equivalent of, the pressure tank in the

application; that Gardner shows troughs formed at the top of the header and apertures above the bottom of the header for the purpose of preventing foreign matter in the water from reaching the curtains; and that the curtains in the Gardner reference are considered to be flexible and yielding and are attached to the header. The board concluded, saying:

"* * * Claim 10 does not distinguish from the disclosure of the Gardiner [Gardner] patent by merely terming the curtains 'carbonator curtains' or the chamber a 'pressure tank.' * *"

The patent to Gardner was issued in 1900 and related to improvements in an air-cooling apparatus. The cooling liquid in that invention was admitted to the troughs through pipes, subsequently being distributed in fine streams onto a canvas sheet or "other suitable material" at which time contact was made with air passing through the chamber.

The applicants contend that Gardner represents non-analogous art. While it is perfectly apparent that the reference device is not described as for use as a carbonator, the Primary Examiner was of the opinion that claim 10 of the application stated no art in that the only mention of a carbonator therein was the reference to carbonator curtains. This view was also argued by the solicitor in his brief. While we are inclined to agree that claim 10 does not present any issue of art, we feel that, in any event, the reference patent was properly applied in the rejection of the claim in question. The fact that the Gardner patent is quite old does not subtract from its utility for that which is clearly disclosed therein, nor does its application, in any way, call for a deviation from the accepted test of what constitutes an inventive concept on the part of the applicant seeking a patent. In the words of the Primary Examiner, "claim 10 appears to call for little more than curtains attached to header troughs with the trough delivering the liquid at an elevated point." The structural features set forth in the claim are therefore, in our opinion, met by the reference patent in the patentable sense, and we must conclude that the reasons advanced by the tribunals below in rejecting claim 10 are not such as to warrant a different holding here.

Finally, claims 19 and 20 (claim 20 has previously been set forth) add a syrup storage tank attached onto the sidewall of the pressure tank; the syrup is cooled by contact with the refrigerated pressure tank, both the carbonator and syrup tank being well insulated on all sides. The carbonated water is discharged through a nozzle.

The Primary Examiner rejected these claims on the ground that they were aggregative and on the further ground that no invention was involved in view of the reference patent to Delen and the patent (2,-121,841) to the inventor Tweed. The Board of Appeals affirmed on the basis of the patent to Tull, stating that the additional features disclosed in the claims did not import any invention into said claims. The board did not rely on the Tweed reference feeling that it was, at most, merely cumulative to Tull.

We cannot adhere to the Primary Examiner's rejection of these claims as being aggregative. The claims are actually directed to an unpatentable combination and not an aggregation. See In re Worrest, 201 F.2d 930, 40 C.C.P.A., Patents, ——. We therefore deem it unnecessary to do more than cite with approval the following from the decision of the Board of Appeals:

"* * * This additional feature does not import any invention into these claims since the syrup tank * * disclosed in the Tull patent is included in the insulated tank in the same relation to the cooling element as in the device defined in these claims.

"From the above, it will be apparent that it is our opinion that the claims defined no more than the consolidation of desirable features of the cited prior art in such a manner that there is no new coaction between the elements and no new and unexpected results flow from the device except that which could be expected from a mere consolidation of old elements. * * *"

The motion to dismiss claim 13 is hereby granted, and for the reasons hereinbefore

stated, the decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Chief Judge (concurring).

I do not think there is any teaching in the Delen patent that the wire mesh (the wire being made of metal) has a wicking effect. "Wicking effect," as I understand it, is produced by capillary attraction, and I know of no metal which has the characteristic of capillary attraction.

I do not agree with the construction apparently placed upon the Burk et al. patent by the tribunals of the Patent Office (and seemingly approved by the majority of the court) to the effect that that patent attributes a wicking action to glass cloth, such as that named in claims 2 and 3. No reference to glass cloth appears in the claims of that patent, but the specification states:

> "To feed liquid such [so] that it may film down on the surfaces of the plates or sheets 5, various feeding apparatus may be applied, but a preferable form involves pieces or strips 12 of a wicking agent or a woven mesh, such as woven wire fabric, glass cloth, etc., these being superposed above the top edges of the plates 5 * * *."

It seems to me that the most reasonable construction of the foregoing is that strips of a wicking agent may be used, or a woven mesh, such as woven wire fabric, may be used, or glass cloth may be used, and that it was not meant to teach that glass cloth is a wicking agent. I do not recall having ever heard that glass, in any form, has absorptive or capillary qualities, but, in any event, the teaching of Burk et al. seems clearly to anticipate the glass cloth feature of claims 1 and 2. If non-absorptive in Burk et al. such cloth would be non-absorptive in those claims and vice versa.

As I view the references, the Delen patent teaches the flow of water in a thin film over the surface of wire, and Burk et al. teach that glass-cloth may be used instead of wire to aid in the absorption of the carbonating gas, and the claims of those patents conform to the teachings expressly set forth in the specifications. On the other hand, appellants have teachings in their specification which might justify claims based upon the use of materials having capillary, or absorptive, qualities for use in properly distributing the water for impregnation with the gas, but I do not find any appealed claim which meets the statutory requirement as to clarity and distinctiveness relative to a wicking feature. It is obvious, I think, that there is not a word or phrase in any one of the appealed claims which would so much as suggest the use of wick action in the carbonating art. As stated by the majority, appellants relied *in the* claims upon flexibility for novelty and found themselves faced with pertinent prior art.

I therefore concur in the conclusion.

JOHNSON, J., concurs in the above.